IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS W. FOX,                        )
            Plaintiff,                )
                                      )
        v.                            )    Civil Action No. 04-1887
                                      )
RYAN BECK & COMPANY, INC.,            )
            Defendant.                )

MEMORANDUM and ORDER

Gary L. Lancaster,                         May 1̶4̶, 2007
District Judge.

        This  is  an  action  in  employment  discrimination.
Plaintiff, Thomas W. Fox, alleges that defendant, Ryan Beck &
Company, Inc., discriminated against him based on his disability in
violation  of  the  Americans  with  Disabilities  Act,  42  U.S.C.
§ 12112, et seq.[1]  Plaintiff seeks monetary damages, injunctive
relief against further violations, and reinstatement.

        Defendant has filed a motion for summary judgment [doc.
no. 41] arguing that plaintiff cannot prove a prima facia case
under the ADA because he is not a "qualified individual" due to his
receipt of Social Security Disability benefits.  Alternatively,
defendant contends that plaintiff's claim  cannot succeed because
defendant has articulated a legitimate, non-discriminatory reason
for plaintiff's termination, and plaintiff has failed to present

_____

        [1] Plaintiff voluntarily abandoned his claims under the
FMLA and ERISA, and for intentional infliction of emotional
distress when they were referred to arbitration.

sufficient evidence of pretext to defeat summary judgment. Plaintiff counters that he has proven the elements of a prima facia case and that he has presented sufficient evidence that defendant's proffered legitimate non-discriminatory reason was a pretext for discrimination.

For the reasons that follow, we will grant defendant's motion for summary judgment.

## I.    FACTUAL BACKGROUND

All material facts discussed herein are undisputed unless otherwise indicated.    Other facts may be discussed in the memorandum in context.

Mr. Fox began working for defendant, a securities brokerage firm, in April of 2002. At the time of his termination, plaintiff was a Senior Vice President, Financial Advisor.    In August of 2003, plaintiff was diagnosed with colon cancer. He had surgery and began chemotherapy treatments in October of 2003.    In late October he began to work part-time, although he had not yet submitted a release from his doctor to return to work and still considered himself to be on medical leave.    Plaintiff did not submit a release from his doctor until December of 2003.

2

In November, plaintiff sought the required approval for an annuity exchange transaction for a client. However, plaintiff's supervisor did not approve the transaction. Several days later, plaintiff liquidated the same annuity for the same client. When the client was notified of the tax consequences of that transaction, he contacted plaintiff to express his concern. Because plaintiff could not immediately speak with the client, plaintiff's assistant notified a supervisor of the client's concerns. When the supervisor spoke with the client, the client informed him that plaintiff had suggested the liquidation as a "different way" to exchange the annuity. The client stated he did not know that there would be costs associated with the transaction, and directed that it be stopped. The supervisor was able to reverse the transaction.

The supervisor notified the branch manager of the situation. The branch manager later spoke personally to the client, who informed him that plaintiff had suggested the liquidation transaction and had not informed him of the tax consequences of it. Based on this information, as well as the information gathered by the supervisor, and due to plaintiff's prior poor disciplinary record, the branch manager decided to fire plaintiff. The branch manager notified his regional manager of the

3

termination decision on December 8, 2003. The branch manager notified plaintiff of his termination on December 9, 2003.

Within a week of his termination, plaintiff filed an application for Disability Insurance benefits with the Social Security Administration. Following an appeal of the initial denial, plaintiff was awarded disability benefits retroactively to October 8, 2003, the date of his surgery.

## II.   STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e., the

4

material facts, however, will preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Similarly, summary judgment is improper so long as the dispute over the material facts is genuine.  Id.  In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of

record is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 248-49.  Under these standards, the non-moving party must do more than show there is "some metaphysical doubt" as to the material facts.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

        Although inferences must be drawn in favor of the non-moving party, "an inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment."  Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).  Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)); see also Lujan v. National Wildlife Fed., 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory

5

allegations of the complaint ... with conclusory allegations of an affidavit").

The non-moving party has the burden of producing evidence to establish each element of her claim. <u>Celotex</u>, 477 U.S. at 322-23. The non-movant must show more than "[t]he mere existence of a scintilla of evidence" for elements on which she bears the burden of production. <u>Anderson</u>, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec.</u>, 475 U.S. at 587 (citations omitted).

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law because no reasonable jury could return a verdict in her favor.

It is on this standard that the court has reviewed defendant's motion and plaintiff's response thereto.

III. DISCUSSION

Defendant alleges that plaintiff has not, and cannot, establish a <u>prima facia</u> case under the ADA because he is not a "qualified individual." Defendant also argues that, even were

6

plaintiff able to establish a prima facia case, he cannot defeat summary judgment because he has not rebutted defendant's proffered legitimate non-discriminatory reason for firing him.   Plaintiff contends that he can satisfy the elements of the prima facia case and can ultimately prevail because defendant's proffered legitimate non-discriminatory reason for firing him is a pretext for disability discrimination.

## A.   Qualified Individual

### 1.   Legal Standards

In order to establish a prima facia case of disability discrimination, plaintiff must establish that he: (1) has a disability; (2) is a qualified individual; and (3) has suffered an adverse employment action because of his disability.   Deane v. Pocono Med. Ctr., 142 F.3d 138, 142 (3d Cir. 1998). A "qualified individual" is defined as one who: (1) possesses the required skill, experience and education for the position; and (2) can perform the essential functions of the position, with or without reasonable accommodation.   42 U.S.C.A. § 12111(8); Deane, 142 F.3d at 142; Buskirk v. Apollo Metals, 307 F.3d 160, 168 (3d Cir. 2002).

"[T]he burden is on the employee to prove that he is an 'otherwise qualified' individual."   Shiring v. Runyon, 90 F.3d 827, 832 (3d Cir. 1996) (citation omitted).   The determination of

7

whether an individual with a disability is qualified is made at the time of the employment decision, and not at the time of the lawsuit. Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 580 (3d Cir. 1998).

The receipt of Social Security Disability benefits does not automatically estop a plaintiff from pursuing an ADA claim, nor even raise a strong presumption against his success under the ADA. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 797-98 (1999). However, an employee must reconcile the conflicting position that he is too disabled to work (made for purposes of Social Security Disability Insurance) with the position that he is able to perform the essential functions of his job, with or without reasonable accommodations (made for purposes of the ADA). Id. at 797-98.

Specifically, to defeat summary judgment, a plaintiff must offer an explanation sufficient to warrant a reasonable juror's conclusion that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement before the Social Security Administration, the plaintiff could nonetheless "perform the essential functions" of his job, "with or without reasonable accommodation." Id. at 807. Typical explanations are that the statements were made at different times, that there has been a change in the individual's condition, or that the Social Security Administration does not consider the issue of accommodations. Id.;

8

Motley v. New Jersey State Police, 196 F.3d 160, 164-65 (3d Cir. 1999).

## 2. Discussion and Conclusion

There is no dispute that plaintiff possesses the required skill, experience and education for the position of financial advisor. Rather, the parties dispute whether plaintiff can prove that he could perform the essential functions of the position, with or without reasonable accommodation. Defendant contends that plaintiff cannot satisfy this element due to statements plaintiff made in the course of pursuing Social Security Disability benefits. Plaintiff alleges that he can prove this essential element because he made no inconsistent statements before the Social Security Administration, or because, to the extent that he did make inconsistent statements, he can explain the reason for the inconsistencies.

The first step in our assessment of the nature of plaintiff's prior assertions and their impact on the current claim is to determine whether plaintiff made statements before the Social Security Administration that genuinely conflict with statements made in this ADA case. Motley, 196 F.3d at 167. We find that he did.

9

Plaintiff filed his application for Social Security Disability benefits less than a week after his termination in December of 2003. In that application, he made the following statements regarding his condition and its effect on his ability to work: unable to work since October 8, 2003 [date of surgery]; "make mental mistakes" when paying bills; difficulty "thinking, remembering" when going out in public; would rather not make decisions on own "until my drugs take control"; trouble understanding instructions and carrying them out due to "mental wellness"; constant pain throughout body that affects ability to think and concentrate; and fatigued all day. When he filed an appeal of his initial denial of benefits in June of 2004 he made the following statements: "Would you like me handling your money while I have memory & other mental problems?"; "mentally same or worse"; "continued loss of memory"; undergoing hypnosis and psychotherapy for "mental lapses"; and "My mental problems have hampered by mind performance since surgery [October 2003]. Still not having luck with memory or other mental functions."

These statements conflict with plaintiff's position in this case that he was able to perform the essential functions of the job of financial advisor in December of 2003. That job requires a level of mental skill, agility, and stamina. Such a job entails making complex financial decisions, remembering multiple

10

client instructions, brokerage rules and office procedures, and daily stress. Plaintiff's statements at the Social Security Administration that he did not have the mental ability to even pay his bills, go out in public, or make decisions on his own conflict with his statements here that he could perform the essential functions of his prior position.

Because we have identified conflicting statements in the record, next we must determine whether plaintiff's explanation for the conflict is sufficient to warrant a reasonable juror's conclusion that despite the prior statements before the Social Security Administration, he is able to perform the essential functions of the job. Cleveland, 526 U.S. at 807. Plaintiff offers two explanations for the inconsistencies: (1) that he always had the capacity to perform his job on a part time basis, an accommodation not considered by the Administration; and (2) that his condition improved over time. Neither of these explanations is sufficient to defeat summary judgment under the facts of this case.

First, the statements made before the Social Security Administration cannot be reconciled on the basis that plaintiff always had the ability to work part time. Plaintiff did not qualify the statements he made before the Social Security Administration in such a way, nor can we reasonably infer such a qualification here.

11

Plaintiff never indicated to the Administration that his mental lapses, mistakes, or difficulties only occurred when he worked for extended periods of time, or even that they worsened over the course of a day. For example, to the contrary, plaintiff claimed that he had difficulty paying his personal bills due to mental mistakes, a task that could not take more than a few hours. Plaintiff also explicitly told the Administration that his job required him to handle millions of dollars, which he felt he could not do with his memory and mental problems. Again, there is no qualification to this statement indicating that plaintiff believed that he could handle such funds if he could work a reduced schedule.

Upon review of the record, plaintiff's explanation that he could always perform part time work is not supported by the facts. There is no evidence, other than plaintiff's 'unsupported assertions, conclusory allegations, or mere suspicions,' that even with the self-described mental and memory problems, plaintiff could still work part time. The evidence proves the contrary - plaintiff's mental problems hampered the shortest of discrete tasks in his everyday life. Based on the record, no reasonable juror could conclude that plaintiff could perform the essential functions of his job, even on a part time basis.

12

Second, there is absolutely no evidence that plaintiff's
condition improved, allowing him to return to work at the end of
October through the beginning of December, but rendering him
permanently disabled one week after he was terminated.  Although
plaintiff recites this "typical" explanation in his brief, he has
not pointed to one piece of evidence in the record indicating that
his condition improved between early October of 2003 (when he had
surgery and started chemotherapy) and late October-early December
of 2003 (when he worked part time), and then worsened in mid-
December of 2003 (when he filed for Social Security benefits).

The evidence is to the contrary.  According to plaintiff,
himself, his condition was disabling from the time he had surgery
in October of 2003, until the present.  In fact, the only change
noted in his condition is that it was worse in the Spring and
Summer of 2004, when he filed his appeal before the Administration.
Given that plaintiff has not presented any evidence to prove that
an   improvement   in   his   condition   explains   the   inconsistent
statements, and that we have located only evidence to the contrary
upon our own review of the record, no reasonable juror could
conclude that plaintiff could perform the essential functions of
his job at any time after his October 2003 surgery due to an
improvement in his condition.

13

Because plaintiff has been unable to offer a sufficient explanation as to why he was qualified to receive disability benefits in December of 2003, while at the same time being able to perform the essential functions of the job, he cannot defeat defendant's motion for summary judgment.   Summary judgment is appropriate where a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial." Celotex, 477 U.S. at 322.   Plaintiff bears the burden of proving that he is a qualified individual under the ADA.   Given his prior statements before the Social Security Administration, and his failure to offer an adequate explanation for their inconsistencies with statements made in this case, he will be unable to prove an essential element at trial.   Therefore, it is appropriate to enter summary judgment in defendant's favor on this basis.

## B.   Legitimate Non-Discriminatory Reason

Even assuming that plaintiff could establish a prima facia case, he still could not survive summary judgment because plaintiff has failed to rebut defendant's proffered legitimate non-discriminatory reason for his firing.   Once a defendant has articulated a legitimate non-discriminatory reason for its employment action, to defeat summary judgment a plaintiff must

14

produce evidence from which a fact finder could either disbelieve the employer's articulated reason, or believe that a discriminatory reason was more likely than not the cause of the employment action. Salley v. Circuit City Stores, Inc., 160 F.3d 977, 981 (3d Cir. 1998) (citing Olsen v. General Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996)).  To discredit the employer's articulated reason, plaintiff may point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a reasonable fact finder could rationally find them 'unworthy of credence.'"  Simpson v. Kay Jewelers, 142 F.3d 639, 644 (3d Cir. 1998).

Defendant has produced evidence indicating that it fired plaintiff because it considered the late November 2003 annuity liquidation for a client to be an attempt to circumvent company policies regarding supervisor approval for annuity exchanges. Defendant has produced evidence establishing that it based its termination decision on conversations with plaintiff's assistant, supervisor and branch manager, and with the client himself.  In response, plaintiff claims that this reason is pretextual because the transaction was proper and because the termination decision was made immediately after plaintiff provided a return to work authorization.

15

Plaintiff's arguments do not support an inference of pretext because they are factually unsupported, and legally without consequence. Whether the transaction was, or was not, or should have been deemed, appropriate is not the issue. Pretext is not shown by evidence that the employer's decision was wrong or mistaken. The issue is whether discriminatory animus motivated the employer, not whether the employer is "wise, shrewd, prudent, or competent." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). Therefore, the fact that plaintiff did not receive a sticky note attached to the annuity exchange denial, or that the client signed the form approving the transaction, or that the supervisor signed off on the fax cover sheet to the client attaching the liquidation form for signature, or that plaintiff denies having suggested the liquidation as an alternative to the annuity exchange, or that a NASD investigation did not find evidence of unauthorized trading, or that plaintiff did not benefit financially from the transaction is irrelevant.

What is relevant is that defendant believed that the transaction was an attempt by plaintiff to circumvent firm policy regarding annuity exchanges. There is nothing in the record to indicate that defendant's conclusion was weak, implausible, inconsistent, incoherent, or contradictory, such that pretext could be inferred. The client himself told defendant's managers that

16

plaintiff had presented the liquidation to him as an alternative to the exchange. Even if this were not true, there is nothing in the record to indicate that defendant was unreasonable in relying on the client's statements. In addition, defendant based its decision on the objective fact that the liquidation was completed just days after a proposed exchange of the same annuity had been denied.

There are no weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reason that would indicate that it is unworthy of belief. Instead, the record indicates that defendant's reason for terminating plaintiff never changed, was supported by information from a third party, and was objectively reasonable given the facts that were collected. Plaintiff has not presented any other evidence indicating that discriminatory animus was the real reason for the termination, such as unequal treatment or discriminatory comments. Plaintiff's attempt to establish pretext on the basis that defendant made the wrong, or a bad, decision is insufficient under the law.

Nor can the alleged fact that plaintiff was fired the same day that he submitted a return to work slip establish pretext in this case. Plaintiff's timing argument is not supported by the evidence. The record establishes that the decision was made to fire plaintiff on December 8, 2003, with plaintiff being notified

17

of the decision on December 9, 2003.  The record also establishes

that plaintiff's return to work slip was received by defendant on

December 9, 2003.

Plaintiff's reference to his assistant's testimony that

she might have known about a week prior to December 9th that

plaintiff was going to be fired, but could not be sure on the

timing, is insufficient to establish a genuine dispute of material

fact.    It is undisputed that the decisionmaker decided to fire

plaintiff before the return to work slip was submitted.  It is also

undisputed that the decisionmaker did not know that the return to

work slip had been submitted when he notified plaintiff that he was

being fired.  The facts do not support a 'pretext based on timing'

argument.

Because plaintiff has not provided evidence from which a

fact finder could either disbelieve the employer's articulated

reason, or believe that a discriminatory reason was more likely

than not the cause of the employment action, he cannot defeat

summary judgment on this alternative basis.

## IV.  CONCLUSION

For the foregoing reasons, summary judgment will be

entered in defendant's favor.  An appropriate order follows.

18

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS W. FOX,                        )
                Plaintiff,            )
                                      )
        v.                            )      Civil Action No. 04-1887
                                      )
RYAN BECK & COMPANY, INC.,            )
                Defendant.            )

ORDER

AND NOW this $l^{\vee}$ th day of May, 2007, IT IS HEREBY ORDERED
that defendant's motion for summary judgment [doc. no. 41] is
GRANTED;

        IT IS FURTHER ORDERED that defendant's motion to strike
[doc. no. 54] is DENIED;

        IT IS FURTHER ORDERED that defendant's motion for leave
[doc. no. 56] is GRANTED;

        Judgment shall be entered in defendant's favor.

        The Clerk of Court is directed to mark this matter as
closed.

BY THE COURT,

_____, J.

cc:  All Counsel of Record

19